Thank you, Your Honor. Your Honors, David Landry on behalf of the petitioner, Mr. Lemus-Galvan. Your Honor, this case revolves around a denial of deferral of removal from an immigration judge that was confirmed by the Board of Immigration Appeals without comment. And essentially what this case boils down to is that the immigration judge, when he entered his order, decided that the petitioner had shown and proven that it was more likely than not that he'd be tortured or killed if he was removed to Mexico. However, the immigration judge also found that because the family that controlled the areas of the border that the petitioner would fear, in this case the Pimentel family who evidently controlled a very large drug cartel in the drug areas, their use of the police would not be the same as the use of police throughout Mexico, and so that the petitioner would have a safe haven somewhere else in Mexico. Now at the time that the immigration judge made this decision in 1999, he did not have the benefit of the holding in Melkonian, nor did he utilize the instructions given to us by the U.N. Convention Against Torture. And in particular, I'm reading from Melkonian v. Ashcroft, 320-1061, which I'm sure Your Honors are familiar with, but on page 1069 it says, it is not enough, however, for the IJ to find that the applicants could escape persecution by relocating internally. It must be reasonable to expect them to do so. The Court of Melkonian goes on to discuss what is reasonable, and they look at some of the factors that the codes of federal regulation have utilized, and so have the U.N. Convention Against Torture, or U.N. And in particular, on page 1070, the Melkonian court refers to factors like age, gender, familiar ties, all of these things the immigration judge looked at, but when the immigration judge read the regulations, he interpreted them quite a bit differently. He considered them, the wording to be, if he could relocate to any other part of the country, then the petitioner could not possibly get protection of the U.N. Convention Against Torture. Mr. Landria, you didn't file a reply brief, and maybe before you get to the merits, you should respond to the government's argument that there is no jurisdiction in this court to review the denial of removal. Your Honor, I did file a reply brief. I'm sorry, yes, I do have it. I'm sorry, October 27th. Yes, Your Honor. What's your argument on the jurisdiction? Well, Your Honor, much like there was in Melkonian, the jurisdiction is, as the court found in Melkonian, that the court had jurisdiction to review the issue because it was an issue as to a question of law and whether the immigration judge had applied the right law. And that's exactly what I was getting to here, Your Honor, is that the immigration judge did not apply the right law. He read the regulations. It sounds like he made a factual finding. I'm sorry, Your Honor? It sounds to me like he made a factual finding. He did also make a factual finding, Your Honor. He said they can relocate, he can relocate safely. That just sounds like a factual finding. That sounds to me like it's non-reviewable. I understand, Your Honor. What I'm getting to here is that just like in Melkonian, the facts, the judge reads into it, and here I'm referring, I'm quoting from page 169 of the administrative record, which is the conversation that the judge had with the defense attorney at the time. And he says, but it does not appear that that's the regulation in this case, and I'm obliged to apply the regulation even if I think it is erroneous or unlawful or unconstitutional. So my decision would be this, that the respondent has presented evidence that it's more the respondent can probably find a safe place elsewhere in the country. Now, though nobody among the family would hope for that because there's no one in those parts of the country and is unfamiliar with the life in those other parts of the country, the point here, Your Honor, is that the immigration judge from the very beginning when he did this analysis, he misapplied the law. He should have been looking at whether it was reasonable under the circumstances to expect the petitioner to be able to relocate. And the fact is that the petitioner hadn't lived in Mexico since he was two years old, has no family there. The family that was there have all been killed by the Pintel family. And so it would, under the circumstances, it would not be reasonable to expect the petitioner to be able to relocate in Mexico. Would you address the more specific issue of the aggravated felony and our jurisdiction? Well, Your Honor, I don't think there's a dispute as to whether the petitioner has been convicted of an aggravated felony. Correct. And is that a sufficient basis for denial of our jurisdiction? I don't think so, Your Honor. I think that this Court and other courts have found that certain courts do have jurisdiction over these issues when it is a question of law or when a constitutional violation has. What's the constitutional violation? Well, Your Honor, every alien that's going through removal proceedings has the right to due process and equal protection. And when the immigration judge misinterprets the facts or gives facts that are not, that don't arise within the testimony, within the evidence, and in particular here I'm talking about the judge's decision that the petitioner could relocate, and his reasoning, part of his reasoning for his ability to relocate, is that the petitioner could go live in the turf area. Let me just back up a little. Yes, Your Honor. Under your theory, every case would be a constitutional case because, every case in which you disagree with the immigration judge, because immigration judge would be making factual findings based on his or her perception of the facts. And I'm still having some trouble because that would basically eviscerate any of the jurisdictional statutes if we adopted your broad theory. Your Honor, perhaps I haven't worded my theory correctly then. I apologize. I'm ready for another round. Okay. All right. I would agree, Your Honor, that based upon that broad theory that it would eviscerate the whole situation. But the point here is that there was no evidence in the record, there was nothing produced that wherein the immigration judge could find that it was reasonable to expect the petitioner to go live in the drug turf of a competing drug cartel and expect the competing drug cartel to protect the petitioner from the Mexican police. No, he didn't say protect. He just says he'd be outside of the turf of the family that's out to get him, and these other people wouldn't care. So you've got all of the rest of Mexico to live in. It sounds like a factual determination to me. Your Honor, in this case I would refer, and I understand your position, I would refer to page 6 of the judge's order. At the top he says, in part his safety would be ensured by the diligence of those other syndicates which seek to protect their turf. And to me that's implying as if the petitioner can go live in an area that's supposedly controlled by another drug cartel and expect that drug cartel to ensure and have certificates. I don't think he would say anything more than one gang does not cooperate in the turf of another gang, and that's just what happened. He'd be outside the jurisdiction of the one gang, and they wouldn't venture into somebody else's turf. Your Honor, I completely understand that, but the huge exception here is that it's not just the Pimentel gang or drug cartel that's causing potential harm to the petitioner. It's the fact that the Pimentel family uses Mexican police and Mexican military officials to commit their murder acts. And there was ample evidence in the country reports at that time, and there's ample evidence now. In fact, page 2 of the country reports. Well, you see, that's only another disagreement, you know, with the finding of fact, isn't it? Well, Your Honor, that's my point, is that the judge, in other words, the judge should be looking at the facts, treating them objectively, and then applying them to the law. And you don't like the way he treats the facts. You would come to a different conclusion based on the facts. You don't like his finding. Well, obviously, I don't like his finding, Your Honor, but it's more to the point that he has fabricated facts that are not within the record, that no one ever testified to. Like what fact did he fabricate? What fact did he fabricate? Well, the fact that the belief, the position that the petitioner would be able to and would be safe in another area, through the due diligence of that drug cartel. Well, that's something even his father didn't disagree with, isn't it? No, I... That's not an argument his father made as to why, you know, he couldn't move there. He just said, well, he wouldn't be familiar with that. He's never lived there. Right, exactly, Your Honor. That's my point, Your Honor, is that there was no evidence before that court that the petitioner would be able to move into another area. In fact, when the father was asked that question, he says, well, who knows? And that's the point, is that who knows? Well, he didn't make the argument you're making now. I'm sorry, who was that? The father. The father. Well, Your Honor, if you read the testimony of the father, the father obviously is of limited education because many of his responses are... I know, but apparently he's dealt with these drug cartels, right? Well, it's my understanding... He's got a different kind of education. My understanding is his family has been the victim of the drug cartels. I'm not sure to what level he deals with them, per se. Okay, thank you. We'll hear from the government. Thank you, Your Honor. May it please the Court, Donald Kuvian for a response. Who knows? That was the answer, and that provides the substantial evidence for the finding that the witness's son could live anywhere in Mexico he wanted to outside of Baja, California. It's a factual question, and that's all it is. Well, your opposing counsel has made the argument that this is essentially what the IJ did is misconstrued the regulation. Therefore, this becomes a question of law. Do you wish to address that argument? I'm sorry, the latter part? It becomes a question of law because the IJ misapplied the regulation. Well, I have not heard that argument, Your Honor. It wasn't... He just made it this morning, I thought. That's sort of my point, that it wasn't in the opening brief. I'm embarrassed to say that I'm not aware of a reply brief, so I don't know what went amiss, and I should have checked Pacer. But this Court has had numerous decisions saying just because you call it a constitutional question or a question of law doesn't make it one. It has to be at the least colorable, and I heard one question to the petitioner this morning. Well, how does that become a question of law? Isn't it a factual question? That's my response. I don't hear it to be a question of law. It's easy to say that if you disagree with the findings of fact that there is a potential misapplication of the law, but I haven't heard any demonstration of that. I gather you rest on your brief. If I can, I will, Your Honor. Thank you. The case is signed. You will stand submitted.
judges: Kozinski, Tashima, McKeown